NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| Elisabeth YUCIS, | |
| Plaintiff, | Civil No. 18-15842 (RBK/AMD) |
| v. | **OPINION** |
| SEARS OUTLET STORES, LLC, | |
| Defendant. | |

**KUGLER**, United States District Judge:

This matter comes before the Court on Defendant Sears Outlet Stores, LLC's motion to dismiss Plaintiff Elisabeth Yucis' Complaint. (Doc. No. 7.) For the reasons below, Defendant's motion is **GRANTED**.

**I. BACKGROUND**[1]

This case involves sexual advances by a Sears employee during Plaintiff's attempt to buy a refrigerator. (*See* Doc. No. 1, Ex. A ("Compl.").) The incident occurred in April 2018 when Plaintiff interacted with Sales Manager Len Jaffe, who Plaintiff claims is a member of Defendant's "upper management." (*Id.* at ¶¶ 13–15.)

Jaffe spoke to Plaintiff inappropriately. Upon meeting Plaintiff, Jaffe asked "[w]hat is a pretty girl like you doing in a place like this?" (*Id.* at ¶ 16.) Plaintiff replied that she needed a refrigerator. (*Id.* at ¶ 17.) Plaintiff then showed Jaffe a picture of her kitchen on her phone to describe the type of refrigerator she needed. (*Id.* at ¶ 18.) Implying something sexual, Jaffe asked,

---

[1] On this motion to dismiss, the Court accepts as true the facts pled in the Complaint and construes them in the light most favorable to Plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

1

"[a]re there photos on there that I'm not supposed to see?" (*Id.* at ¶¶ 19–20.) In a business-like tone, Plaintiff responded that she had no such photos. (*Id.* at ¶ 21.) Jaffe then said, "I am married and so are you, I am just having fun." (*Id.* at ¶ 22.) Again, Plaintiff responded in a business-like tone and called Jaffe's conduct inappropriate. (*Id.* at ¶ 23.) Yet Jaffe continued making allusions to Plaintiff. (*Id.* at ¶ 24.)

Eventually, Plaintiff decided to leave, stating that "she was no longer interested in purchasing an appliance at the store." (*Id.* at ¶ 24.) Jaffe replied, "[t]ext me later if you feel lonely" and gave Plaintiff his business card. (*Id.* at ¶ 25.)

Thereafter, Plaintiff "attempted to redress the situation with Sears Corporate." (*Id.* at ¶ 26.) But she received "no satisfaction whatsoever" and "was forced to spend additional time" buying a refrigerator elsewhere. (*Id.* at ¶¶ 26, 29.) As a result of the incident, Plaintiff experienced pain, suffering, embarrassment, anger, and humiliation. (*Id.* at ¶ 29.)

This suit followed. After Plaintiff sued Defendant in state court, Defendant removed the action to this Court based on its diversity jurisdiction. (Doc. No. 1, Notice of Removal at ¶¶ 1–7.) Plaintiff asserts that because of Jaffe's conduct, Defendant violated the New Jersey Law Against Discrimination ("NJLAD") in several ways. (Compl. at ¶¶ 31–47.) First, Plaintiff claims that Defendant engaged in public accommodation discrimination (Count I). (*Id.* at ¶¶ 31–32.) Second, Plaintiff claims that Defendant engaged in sexual harassment discrimination in a place of public accommodation (Count II). (*Id.* at ¶¶ 33–34.) Third, Plaintiff claims that Defendant discriminated against her in the course of the formation and conduct of a contractual relationship (Count III). (*Id.* at ¶¶ 35–36.) Fourth, Plaintiff claims that Defendant engaged in sexual harassment discrimination in the course of a contractual relationship (Count IV). (*Id.* at ¶¶ 37–38.) Finally, Plaintiff requests equitable relief for these violations (Count V). (*Id.* at ¶¶ 39–47.)

Defendant now moves to dismiss Plaintiff's Complaint. (Doc. No. 7 ("Def.'s Br.").) Plaintiff opposes the motion. (Doc. No. 11 ("Pl.'s Br.").)

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips*, 515 F.3d at 233). A complaint survives a motion to dismiss if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In making this determination, the court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675–79 (2009)). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive a motion to dismiss when a court can only infer that a claim is merely possible rather than plausible. *Id.*

## III. DISCUSSION

Plaintiff's claims fall into two groups: (1) claims involving public accommodation discrimination (Counts I and II), and (2) claims involving discrimination in contracting (Counts III and IV). The Court discusses these groups in turn, though none of Plaintiff's claims survive Defendant's motion to dismiss.

### A. Public Accommodation Claims

In Counts I and II, Plaintiff asserts that Defendant engaged in public accommodation discrimination under the NJLAD, which protects a person's opportunity "to obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . sex . . . ." N.J.S.A. § 10:5-4. The NJLAD thus forbids any "owner, lessee, proprietor, manager, superintendent, agent, or employee of any place of public accommodation directly or indirectly to refuse, withhold from or deny to any person any of the accommodations, advantages, facilities or privileges thereof, or to discriminate against any person in the furnishing thereof" because of a person's sex. N.J.S.A. § 10:5-12(f)(1).

Although the parties agree that Defendant's store is a place of public accommodation, they dispute what Plaintiff must allege to hold Defendant liable for Jaffe's conduct. According to Defendant, Plaintiff must allege that Defendant had some knowledge of Jaffee's actions, but the Complaint contains no plausible allegations that suggest "actual or constructive notification." (Def.'s Br. at 6.) Plaintiff claims that she need not allege "that some higher authority within Sears was aware of Mr. Jaffe's conduct or in some way condoned it at the time it occurred" because discrimination in public accommodations is, "by [its] very nature, [a] one time occurrence[]." (Pl.'s Br. at 5–6.) Plaintiff further claims that "the facial language of the statute demands" that Defendant "be held liable for the actions of [its] agents and employees." (*Id.* at 6.)

Plaintiff's arguments are unfounded, as a panel of the New Jersey Appellate Division recently held. *See N.W. v. Greater Egg Harbor Reg'l High Sch. Dist.*, No. A-5079-16T4, 2018 WL 6332247, at *4 (N.J. Super. Ct. App. Div. Dec. 5, 2018).[2] In *N.W.*, a school security guard pushed a student and called him a racist name while removing him from the premises. *Id.* at *1. Thereafter, the student sued the school district but not the security guard. *Id.* at *2. In attempting to hold the school board liable for the security guard's remark, the plaintiff, like here, relied on the facial language of the NJLAD to argue that because the security guard "was defendant's employee," the school board was "vicariously liable for his discriminatory conduct." *Id.* The trial court granted summary judgment to the school district and the Appellate Division affirmed. *Id.*

In affirming the trial court's decision, the panel noted that because the plaintiff sought "to hold the school district liable for a single incident of an unauthorized comment by a low-level employee in violation of the district's anti-harassment policy," the case required a different legal analysis than the analysis used in cases where "the discriminatory statements were uttered by the entity's owner, the party that the plaintiffs sought to hold liable." *Id.* at *4. Rejecting the plaintiff's claim, the panel reasoned:

> Here, there is no competent evidence [that the security guard] had previously uttered racially disparaging comments or exhibited racially discriminatory conduct. Defendant had no actual or constructive notice [that the security guard] would engage in such behavior, which was outside the scope of his employment. Nor is there any evidence defendant supported or ignored any prior discriminatory conduct by [him]. Also absent is any evidence defendant acted with an actual or apparent design to discourage plaintiff from attending the school.

---

[2] Plaintiff's arguments are also misleading. Plaintiff's counsel—Costello and Mains—argued the losing position in *N.W.*, yet counsel reasserts it here without addressing the case or explaining why this Court should not follow it. These recycled arguments are neither persuasive nor forthcoming. Counsel must distinguish—and not simply ignore—known adverse cases. *See* RPC 3.3(a)(3). Counsel is reminded that "candor [is] called for not as a matter of courtesy, but as an integral ingredient of a professional obligation." *Matter of Nigohosian*, 88 N.J. 308, 315–16 (1982).

*Id.* Thus, the panel found "no basis for liability" on the school board's part and—contrary to Plaintiff's claim here—"decline[d] to read N.J.S.A. 10:5-12(f)(1) as imposing strict or vicarious liability on an employer for a single incident of an unauthorized comment by its employee . . . where there is no actual or constructive notice that the employee has exhibited discriminatory conduct in the past, and the comment did not relate to the plaintiff's present or future use of school facilities." *Id.*

*N.W.* resolves this case. Plaintiff alleges no facts that relate to any of the *N.W.* inquiries.[3] Nor does Plaintiff cite any case to suggest that the inquiry is different. Instead, Plaintiff relies on the very cases that the *N.W.* panel descibed as using a different legal analysis (Pl.'s Br. at 3–5), and a case that deals with irrelevant issues: whether a location was a public accommodation, and whether the plaintiff was in an employer-employee relationship with the defendants for purposes of determining if employment discrimination occurred. *See Thomas v. Cty. of Camden*, 902 A.2d 327, 330 (N.J. App. Div. 2006).

Dismissal is appropriate for another reason: Plaintiff fails to allege that she could not buy a refrigerator from Defendant or otherwise access its public accommodations, let alone because of her sex. In fact, Plaintiff's allegations suggest the opposite—that the public accommodations were available, but she simply "was no longer interested in purchasing an appliance at the store." (Compl. at ¶ 24.) This alone foils her claims. *See N.W.*, 2018 WL 6332247, at *3 (rejecting public accommodation discrimination claim in part because the perpetrator of the discrimination "did not tell plaintiff he was not welcome at the school, much less that he was not welcome because he was

---

[3] Although the security guard in *N.W.* was a "low-level" employee, and here, Plaintiff alleges that Jaffe was in Defendant's "upper management," the Court cannot accept those allegations because they are conclusory. As always, supporting factual averments are required before an allegation is entitled to the assumption of truth.

African-American."); *Harrison v. New Jersey Transit Bus Operations*, No. 17-cv-7124, 2017 WL 5633207, at *3 (D.N.J. Nov. 22, 2017) (granting motion to dismiss because the plaintiff "present[ed] no facts supporting that she was denied access to a public accommodation based on her race").

B. **Contractual Discrimination Claims**

Counts III and IV fare no better. In those Counts, Plaintiff alleges that Defendant violated the NJLAD by discriminating against her in the course of forming a contract, in the conduct of a contractual relationship, and in the course of a contractual relationship. (Compl. at ¶¶ 35–38.) But Plaintiff abandoned these claims because she did not respond to Defendant's arguments on those claims or mention them at all in her brief. Accordingly, Counts III and IV are dismissed.[4]

IV. **CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**, and Plaintiff's Complaint is **DISMISSED**. An Order shall issue.


Dated: 6/18/2019                                    /s/ Robert B. Kugler
                                                    ROBERT B. KUGLER
                                                    United States District Judge

---

[4] *See, e.g.*, *Allen v. Quicken Loans Inc.*, No. 17-cv-12352, 2018 WL 5874088, at *10 (D.N.J. Nov. 9, 2018) (granting motion to dismiss and stating that "[plaintiff] does not respond to this argument, and in fact, his brief appears to abandon the claim entirely by not mentioning it at all"); *Iwanicki v. Bay State Mill. Co.*, No. 11-cv-1792, 2012 WL 4442643, at *5 (D.N.J. Sept. 21, 2012) (granting motion to dismiss when the plaintiff did "not respond to the arguments" in defendant's moving brief or offer additional support for plaintiff's position); *Michel v. New Jersey*, No. 10-cv-3892, 2011 WL 1584287, at *3 (D.N.J. Apr. 25, 2011) (deeming claims abandoned and dismissing them because the plaintiff did not offer any opposition to the defendants' motion to dismiss on several claims); *Totalogistix, Inc. v. Marjack Co., Inc.*, No. 06-cv-5117, 2007 WL 2705152, at *3 (D.N.J. Sept.14, 2007) (granting motion to dismiss and finding that plaintiff abandoned his claim by offering no defense in its opposition papers).